Advent Software, Inc. v SEI Global Servs., Inc. (2021 NY Slip Op 03807)





Advent Software, Inc. v SEI Global Servs., Inc.


2021 NY Slip Op 03807


Decided on June 15, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 15, 2021

Before: Renwick, J.P., Kern, Singh, Moulton, JJ. 


Index No. 655631/20 Appeal No. 14065N Case No. 2021-00204 

[*1]Advent Software, Inc., et al., Plaintiffs-Counterclaims Defendants-Appellants,
v
SEI Global Services, Inc., Defendant-Counterclaim Plaintiff-Respondent.


Shearman & Sterling LLP, New York (Stephen Fishbein of counsel), for appellants.
Holland & Knight LLP, New York (Benjamin Wilson of counsel), for respondent.



Order, Supreme Court, New York County (Andrew Borrok, J.), entered on or about January 13, 2021, which granted defendant/counterclaim plaintiff's (SEI) motion for a preliminary injunction, unanimously affirmed, without costs.
Preliminarily, we find that the January 5, 2021 Pennsylvania state court order, which contains no "opinion explaining [its] ruling" (Safeguard Mut. Ins. Co. v Williams, 463 Pa 567, 577, 345 A2d 664, 669 [1975]), did not bar SEI's motion for a preliminary injunction. One cannot tell if it merely denied SEI's request that the court lift its previously-imposed stay and decide SEI's motion for a preliminary injunction (as SEI contends) or if it denied SEI's motion for a preliminary injunction on the merits (as appellants contend).
Turning to the merits, the preliminary injunction was not an improvident exercise of discretion (see e.g. Gilliland v Acquafredda Enters., LLC, 92 AD3d 19, 24-25 [1st Dept 2011]). Applying the traditional three-pronged analysis, SEI showed a likelihood of success on the merits on its claim that plaintiff/counterclaim defendant (Advent) breached the parties' contract. The Software License and Support Agreement (SLSA) says Advent can terminate it "if [SEI] fails to perform any material obligation under this Agreement . . . and fails to cure such nonperformance within thirty . . . days following written notice of such failure." Even if SEI solicited Advent's employee and such solicitation materially breached the SLSA, Advent's December 5, 2019 letter was inadequate. It merely described the alleged breach. It nowhere described how SEI could cure its nonperformance. In fact, Advent did not even demand that SEI cure. The letter did "not satisfy the requirement that . . . notices [to cure] be unequivocal and unambiguous" (Greenfield v Etts Enters., 177 AD2d 365, 365 [1st Dept 1991]). We have considered appellants' arguments that the breach was noncurable and that Advent's letter was adequate because SEI responded to it and find them unavailing.
SEI also demonstrated that it will suffer irreparable harm absent an injunction. SEI submitted an affidavit saying that, without access to the three software programs at issue, it would lose its business. The loss of the goodwill of a viable, ongoing business may constitute irreparable harm warranting the grant of preliminary injunctive relief. (see e.g. Barbes Rest. Inc. v ASRR Suzer 218, LLC, 140 AD3d 430, 432 [1st Dept 2016]; Second on Second CafÉ, Inc. v Hing Sing Trading, Inc., 66 AD3d 255, 272-273 [1st Dept 2009]). Appellants' argument that there was no irreparable harm because SEI could have switched to new software between October 2019 and January 2021 is unavailing. First, Advent had no right to refuse to renew. Second, the October 2019 letter said, "We look forward to negotiating toward mutually satisfactory terms for any extension of the Products. In the event Advent and SEI are unable to agree on terms, Advent would continue to honor its contractual [*2]obligation . . . to provide transitional assistance to SEI for the duration of any applicable transition period." The SLSA provides for a three-year transition period. Appellants' argument that SEI's 10-Q for the quarter ended September 30, 2020 shows that SEI will not suffer irreparable injury is also unavailing. As the motion court found, the 10-Q simply does not say what appellants claim it says.
The balance of the equities also favors SEI. The injunction maintained the status quo, and the harm to SEI absent an injunction outweighed the prejudice to Advent from an injunction (see Barbes, 140 AD3d at 432; Gramercy Co. v Benenson, 223 AD2d 497, 498 [1st Dept 1996]). Advent will continue to receive the fees to which it is entitled under the SLSA and Order Schedules. If a factfinder ultimately determines that Advent was entitled to terminate its contracts with SEI, and if the rates SEI is currently paying are below-market, Advent can seek damages. Even if the three software programs at issue represent some of Advent's most important and proprietary intellectual property, there is no evidence that SEI is trying to reverse-engineer them.
We have considered appellants' remaining arguments and find them unavailing.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 15, 2021